Kathleen VIGLAS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–664.

United States Court of Veterans Appeals.

July 22, 1994.

As Amended Aug. 17, 1994.

Kathleen Viglas, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Karen P. Galla, Washington, DC, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, widow of Vietnam veteran Peter Viglas, appeals an April 24, 1992, Board of Veterans' Appeals (BVA or Board) decision denying entitlement to dependency and indemnity compensation (DIC) for the period from November 1987 to February 1990. She has filed an informal brief urging reversal and an award of retroactive DIC benefits for the period in question. The Secretary has filed a brief urging affirmance, contending that there is no statutory authority upon which to assign an effective date for DIC earlier than one year prior to VA's receipt of her original claim in January 1991. The decision of the Board will be affirmed.

## I. Background

The veteran served in the U.S. Army from July 1967 to May 1969, including a tour of duty in Vietnam. R. at 7, 12. In March 1985, he was diagnosed with "poorly differentiated lymphocytic lymphoma" (a "malignant" non-Hodgkins "disorder of the lymphoid tissue", DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 964–65 (27th ed. 1988)). R. at 50. He died in November 1987 (R. at 16); the death certificate showed the cause of death as "[c]ardiorespiratory arrest" due to "[m]ultisystem [f]ailure" as a consequence of "[h]emolytic-uremic [s]yndrome". Ibid. However, it was later determined that the chemotherapy used to treat the veteran's non-Hodgkins lymphoma (NHL) had caused the complications which led to his death. R. at 57. Apparently, before his death, the veteran had filed a claim for benefits under the Agent Orange Veteran Payment Program. See Attachment to Appellant's Br. (The program was established by a settlement of a class-action suit brought in the U.S. District Court for the Eastern District of New York, and is administered pursuant to that Court's

order by a nongovernmental, nonprofit entity. See In re "Agent Orange" Product Liability Litigation, 597 F.Supp. 740, 862 (E.D.N.Y.1984).) The appellant apparently filed for, and received sometime prior to March 1989, a lump-sum survivor payment under that program. See R. at 22, 24.

In January 1991, the appellant filed with a Department of Veterans Affairs (VA) regional office (RO) an application for DIC. R. at 18. In May 1991, pursuant to 38 C.F.R. § 3.313 (1991), the VARO granted service connection effective February 1991 for the cause of the veteran's death. R. at 60, 80. Section 3.313 established, retroactive to August 5, 1964, presumptive service connection for veterans with NHL who served in Vietnam during the Vietnam era. See 55 Fed. Reg. 43123 (1990). In her July 1991 Notice of Disagreement, the appellant requested entitlement to DIC benefits retroactive to November 1987, the month of the veteran's death. R. at 74. She asserted that there were "extenuating medical circumstances" that had prevented her from filing earlier. Ibid. She was informed in an October 1991 Statement of the Case that, pursuant to 38 C.F.R. § 3.114(a) (1991), she was entitled to one year of retroactive DIC benefits, with payment beginning February 1990. Ibid. She apparently subsequently received these benefits. See R. at 80.

In her November 1991 appeal to the BVA, the appellant indicated that, due to depression caused by her husband's death, she had "tried to commit suicide twice within the first fourteen months after [his] death" and that she "was not capable of filing [her DIC] claim any sooner than [she] did." R. at 97–98. She enclosed an intake note prepared, apparently in February 1989, by Dr. Keith Rasner of the New England Medical Center (NEMC) Adult Outpatient Psychiatry Unit (R. at 109–14), a June 1991 termination of treatment notice from Dr. K.H. Blackburn of NEMC (R. at 108), and an October 1991 letter and medical records from Dr. James Thompson (R. at 101–107).

Relying on prior NEMC treatment records, a discharge summary from Baldpate Hospital, and the appellant's own account of

events, Dr. Rasner's intake note indicated the following: That the appellant had attempted suicide on January 21, 1988 (R. at 109); that from January 23 to January 29, 1988, she had been hospitalized at Baldpate Hospital (*ibid.*); that from February 18 to June 15, 1988, she had received outpatient psychotherapy at NEMC from Dr. Baron (R. at 110); and that in January 1989, she apparently had attempted suicide again (*ibid.*). Dr. Rasner provided a provisional diagnosis of "dysthymia" and "[c]omplicated grief reaction". R. at 113.

Dr. Blackburn's report indicated that she had treated the appellant with psychotherapy and medication for "major depression" from January 1989 to May 1990. R. at 108. In his October 1991 letter, Dr. Thompson indicated that he had been treating the appellant for "major depression" since July 1991. He further stated: "After her husband's death [the appellant] entered a depression which was unsuccessfully treated for many months by psychotherapy. Eventually she was placed on medication and improved. During this time I do not think that she was capable of filing for a [sic] compensation from [VA]." R. at 101. In its February 24, 1992, denial of entitlement to DIC benefits for the period in question, the Board stated:

> Under 38 C.F.R. § 3.114(a)(3), if a claim is reviewed at the request of a claimant more than one year after the effective date of a liberalizing regulation, benefits may be authorized for a period of one year prior to the date of receipt of such request.... [T]he appellant was authorized [DIC] benefits one year prior to the time of receipt of her application, or January 1990, with actual payment the first day of the following month[,] or February 1, 1990, under the provisions of 38 C.F.R. § 3.31.... [T]hat is the earliest effective date from which [DIC] may be paid.

R. at 8. A timely appeal to this Court followed.

## II. Analysis

### A. Governing Statutory Provisions

■ Section 5110(a) of title 38, United States Code, provides: "Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim ... of ... [DIC] ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." Section 5110(g) of title 38, United States Code, "specifically" provides:

> Subject to the provisions of section 5101 of this title, where ... [DIC] ... is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. *In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.*

38 U.S.C. § 5110(g) (emphasis added); *see* 38 C.F.R. § 3.114(a) (1993). Thus, section 5110(g) constitutes a specific exception to the section 5110(a) stricture that an effective date of a DIC award "shall not be earlier than the date of receipt of application therefor."

■ The Secretary argues that the above provisions govern the outcome in the instant case, as to the determination of a retroactive effective date for DIC benefits, and that these provisions have already been applied in the appellant's favor, dictating that the appellant's DIC benefits be made retroactive to February 1990. Section 5110(g) is certainly applicable and was properly applied here— the appellant received an award of retroactive benefits with payment beginning in February 1990, one year prior to the date of her January 1991 application, which was earlier than the RO's May 1991 determination of her entitlement to benefits. As to the appellant's claim for further retroactive benefits, the Court holds that the language of section 5110(g) is clear in explicitly precluding an award of retroactive benefits beyond the one-year period provided for in that section. The appellant's equitable contentions are nonavailing for the reasons set forth below.

### B. Equitable Tolling

The appellant argues that because she was prevented, due to a mental disability, from

filing a DIC application at the time of her husband's death, the Court should apply the doctrine of equitable tolling to section 5110(g) and award retroactive DIC benefits beginning in November 1987. However, the appellant's case, which would involve tolling not of a statutory application period but of the one-year limitation on the permissible period of retroactive benefits, does not come within any generally recognized tolling doctrine.

The Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), addressed the question of, inter alia, whether equitable tolling applies to a claim brought under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(e), which, in relevant part, provides: "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." The Supreme Court, noting one commentator's observation that "the three-year [limitation] period can have no significance in this context other than to impose an outside limit", held that the three-year limit is a "period of repose inconsistent with tolling" and that "[b]ecause the purpose of the [three-]year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." *Lampf*, 501 U.S. at 363, 111 S.Ct. at 2782.

Following *Lampf*, the First Circuit in *Oropallo v. United States*, 994 F.2d 25 (1st Cir. 1993), confronted the question of whether to apply equitable tolling to a tax refund claimed under 26 U.S.C. § 6511(a) and (b)(2)(A). Section 6511(a) provides, in pertinent part, that a tax-refund claim must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." Section 6511(b)(2)(A) imposes an additional hurdle, requiring that "the amounts sought to be recovered must actually have been paid in the [3]–year period preceding the filing of the claim." *Oropallo*,

994 F.2d at 27. The First Circuit assumed that the appellant had been so incapacitated, as he alleged, as to be, in essence, "prevented . . . from filing his 1983 return on time or from remembering earlier than 1989 that he had not done so." *Id.* at 28 n. 2. The Court then noted that several federal district courts had permitted tolling of the limitations period of section 6511(a) and (b)(2)(A) in reliance on *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), where the Supreme Court specifically held that equitable tolling was applicable against the Federal government in certain cases. *See Wiltgen v. United States*, 813 F.Supp. 1387 (N.D.Iowa 1992); *Scott v. United States*, 795 F.Supp. 1028 (D.Hawaii 1992); *Johnsen v. United States*, 758 F.Supp. 834 (E.D.N.Y.1991). First, the court in *Oropallo* specifically explained:

> [W]e [do not] think that *Lampf* is inapplicable because it considered a statute of limitations applicable to bringing a lawsuit rather than time limits imposed on the filing of an administrative claim. If a specific equitable consideration would justify tolling the limitations period for filing suit, that same equitable consideration should justify tolling the administrative time limits which have been held to be prerequisites to bringing suit.

*Oropallo*, 994 F.2d at 29 n. 6. Thus, *Oropallo* specifically held that the *Lampf* analysis was applicable in an administrative context.

However, the *Oropallo* Court then found that *Lampf* had "altered the relevant [equitable tolling] analysis", and concluded: "By imposing an 'outside limit' or 'cut-off' on the amount of taxes which can be recovered, section 6511(b)(2)(A) operates like the three-year portion of the limitations period in *Lampf*, and is thus a 'period of repose inconsistent with tolling'." *Oropallo*, 994 F.2d at 31. The Court thus held that those statutory provisions "may not be equitably tolled". *Ibid.*

■ Applying the reasoning of *Lampf* and *Oropallo* to the instant case, we hold that sections 5110(a) and (g) of title 38 are constructed in similar fashion to sections 6511(a) and (b)(2)(A) of title 26. Just as section 6511(b)(2)(A) limits the amount of a tax re-

fund to that portion of the refundable taxes paid within the preceding three years, section 5110(g) limits the amount of recoverable retroactive benefits to those for the year prior to the filing of the application. As is the three-year period in section 5611(b)(2)(A), the language of section 5110(g), "[i]n no event shall such award or increase be retroactive for more than one year from the date of application therefor", is clearly intended to impose "a cutoff", imposing a maximum amount of recoverable retroactive benefits. Thus, the appellant's case is distinguishable from cases involving equitable tolling of simple administrative filing deadlines and judicial appeal periods. *See Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir.1993) (30–day judicial appeal period of 5 U.S.C. § 7703(b)(2), the Civil Service Reform Act, amenable to tolling for "mental disability"); *Canales v. Sullivan*, 936 F.2d 755, 759 (2nd Cir.1991) (tolling of 42 U.S.C. § 405(g), providing a 60–day statute of limitations on seeking judicial review of certain Social Security Administration decisions, warranted for "mental impairment").

▆ The Court notes that the appellant's claim would not necessarily profit from application of the tolling analysis generally applicable to such limitations periods. In *Nunnally, supra*, the First Circuit outlined the following factors as considerations in determining whether a mental disability would toll a limitations period: (1) Whether the mental disability "is the very disability that forms ... the basis for which the claimant seeks [relief]"; (2) the length of the filing period (as noted above, *Nunnally* involved a 30–day filing period); (3) the nature of the appellant's disability and the extent to which it is disabling; and (4) whether the appellant was represented during the period in question. *See Nunnally*, 996 F.2d at 5–6; *see also Canales*, 936 F.2d at 758. It appears that the appellant's case does not involve the first and second factors—her mental disability is not the disability for which she is claiming VA benefits (although it does seem that her disability was attributable to the veteran's service-connected death), and this case does not involve a short filing period.

▆ Moreover, in *Butler v. Derwinski*, 960 F.2d 139, 141 (1992), the Federal Circuit determined that the 120–day statutory appeals period, in 38 U.S.C. § 7266(a), to obtain judicial review of a VA benefits decision in this Court cannot be extended by a court, even for good cause. This Court subsequently applied *Butler* to preclude equitable tolling of this jurisdictional judicial-review appeals period in cases where an appellant's mental disability may have caused an untimely Notice of Appeal filing. *See Dudley v. Derwinski*, 2 Vet.App. 602 (1992) (en banc). *But see Dudley*, 2 Vet.App. at 603–06 (Kramer and Steinberg, JJ., dissenting) (identifying issues that the Court failed to address and which should be addressed on appeal to Federal Circuit). Although the instant case does not involve the Court's statutorily prescribed appeals period, *Butler* and *Dudley* certainly do not militate in favor of an application of tolling here.

Neither does *Smith (Edward F.) v. Derwinski*, 2 Vet.App. 429, 434 (1992), provide support for the appellant's contentions. First, the discussion in *Smith* of equitable relief was not necessary to the disposition in that case (an affirmance on other grounds). Second, the provision at issue in *Smith*, 38 U.S.C. § 5110(b)(3)(A), specifically provides for retroactive pension benefits back to "the date on which the veteran became permanently and totally disabled, if the veteran applied for a retroactive award within one year of such date." 38 U.S.C. § 5110(b)(3)(A). That provision does not contain the section 5110(g) unqualified command, applicable here, that "[i]n no event shall such award or increase be retroactive for more than one year from the date of application therefor". Third, here, unlike in *Smith*, the appellant has not alleged, and the record does not indicate, any failure to aid and assist her in the preparation and presentation of her claim, either under 38 U.S.C. § 7722(d) or any other statute or applicable regulation. *Cf. OPM v. Richmond*, 496 U.S. 414, 416, 110 S.Ct. 2465, 2467, 110 L.Ed.2d 387 (1990) (Supreme Court holds that where a former-federal-employee pensioner became ineligible for a statutorily prescribed disability annuity because he had relied to his detriment on erroneous information provided by

Office of Personnel Management and thus failed to take an action required by statute to satisfy statutory eligibility criterion, equitable relief could not be applied to pay the disability annuity because "payments of money from the Federal Treasury are limited to those authorized by a statute").

■ Further militating against an application of tolling here are the education benefit provisions of 38 U.S.C. §§ 3031(d)(1), 3103(b)(1), 3232(a)(2), and 3462(a)(1). Section 3031(d)(1) expressly allows New GI Bill participants an extension of the statutory 10–year period in which to use prescribed education benefits if they were prevented from using those benefits earlier by "a physical or mental disability which was not the result of the [veteran's] own willful misconduct". 38 U.S.C. § 3031(d)(1); *see also* 38 U.S.C. § 3232(a)(2) (same as to the Veterans' Educational Assistance Program); 38 U.S.C. § 3462(a)(1) (same as to the GI Bill); 38 U.S.C. § 3103(b)(1) (extension of 12–year period of eligibility for training and rehabilitation assistance allowed where a "medical condition" made participation infeasible); *see generally Traynor v. Turnage*, 485 U.S. 535, 545–50, 108 S.Ct. 1372, 1380–83, 99 L.Ed.2d 618 (1988) (discussing the meaning of the extension provision in 38 U.S.C. § 1662(a)(1) (now § 3462(a)(1)) to determine whether it violated section 504 of the Rehabilitation Act of 1973). If Congress found it necessary to provide specifically for tolling for a mental disability in the area of VA education benefits, its failure to enact a similar provision specifically applicable to applications for other VA benefits, such as the one-year period delineated in section 5110(g) for retroactive DIC benefits, can reasonably be interpreted as suggesting, absent other indications to the contrary, that Congress did not intend to permit such tolling where it was not specifically authorized. *Cf. Key Tronic Corp. v. United States*, — U.S. —, —, 114 S.Ct. 1960, 1962, 128 L.Ed.2d 797 (1994) (Supreme Court holds that where Congress had included, in a 1986 act amending the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), express fee-award provisions applicable to certain sections of CERCLA, omission of similar fee-award amendments to other sections of CERCLA "strongly suggest[s] a deliberate decision not to authorize such awards"); *Fedorenko v. United States*, 449 U.S. 490, 512, 101 S.Ct. 737, 750, 66 L.Ed.2d 686 (1981) (Congress' omission of a "voluntariness" limitation from section 2(a) of the Displaced Persons Act was "deliberate" given its inclusion of that qualification in section 2(b) of that Act); *Skinner v. Brown*, 27 F.3d 1571, 1574 (Fed.Cir.1994) (where Congress had specifically referred to three different sections of the Social Security Act (SSA) in the Restored Entitlement Program for Survivors (REPS), "[i]f it had similarly intended to incorporate [other SSA sections into REPS] we presume it would have done so expressly."); *cf. Ad Hoc Committee of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States*, 13 F.3d 398, 401 (Fed.Cir.1994) ("It is well established that where Congress has included specific language in one section of a statute but has omitted it from another, related section of the same Act, it is generally presumed that Congress intended the omission.").

### C. Retroactivity of 38 C.F.R. § 3.313

■ The briefing in this case was delayed pending the issuance of VA General Counsel Precedent Opinion 5–94 (Feb. 18, 1994), which addresses the question of how the provisions of 38 U.S.C. §§ 5101(a), 5110(a), and 5110(g) and 38 C.F.R. § 3.114(a) are to be applied in establishing an effective date for service connection for NHL under the August 5, 1964, retroactive effective date established by the Secretary for 38 C.F.R. § 3.313 when promulgating it in 1990. *See* 55 Fed.Reg. 43,123 (1990). (Interestingly, when Congress the following year enacted the Agent Orange Act of 1991, Pub.L. No. 102–4, 105 Stat. 11 (1991), codifying an NHL presumption into statute, in 38 U.S.C. § 1116(a)(2)(A), it made the amendment effective upon enactment.) Under 38 U.S.C. § 7104(c), VA General Counsel precedent opinions are binding on the BVA. *See also* 38 C.F.R. § 19.5 (1993). Upon review of O.G.C.Prec. 5–94, the Court finds nothing therein that clarifies the issue presented here. The opinion in large part addresses whether eligible claimants who, *prior* to the

establishment of presumptive service connection of NHL, had been denied service connection or DIC based on NHL are entitled to receive, under section 5110(g), benefits retroactive to one year prior to the date of their original applications. The opinion does not specifically address the appellant's situation, that of a claimant who had not been denied service connection or DIC prior to the establishment of presumptive service connection for NHL, but appears to assume that such a claimant would be precluded by the second sentence of section 5110(g) from receiving retroactive benefits for more than one year prior to the filing of an application. Given the explicit mandate of section 5110(g) precluding the allowance of retroactive benefits for more than one year from the date of application, and the analysis in part II.B., *supra*, the retroactive effective date of 38 C.F.R. § 3.313 does not, in the appellant's case, have any effect because there is no evidence of record that either she or the veteran had, prior to VA's receipt of her January 1991 DIC application, applied for any VA benefits based on the veteran's NHL.

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court holds that equitable tolling may not be applied to permit retroactive DIC benefits beyond those specifically provided for in 38 U.S.C. § 5110(g) and that the appellant has, therefore, not demonstrated that the BVA committed error that would warrant reversal or remand under 38 U.S.C. §§ 7252 and 7261. The Court thus affirms the April 24, 1992, BVA decision.

AFFIRMED.