**Doris M. GREEN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 95–497.**

United States Court of Veterans Appeals.

Argued Oct. 23, 1996.

Decided Feb. 26, 1997.

Jeffrey Wood, for appellant.

A.M. Fent, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before KRAMER, IVERS, and STEINBERG, JJ.

STEINBERG, Judge.

The appellant, Doris M. Green, the widow of Korean-conflict veteran Dean L. Green, appeals a February 6, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that found no clear and unmistakable error (CUE) in a February 1974 Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision assigning a November 1973 effective date for total disability, and that found the appellant had not presented new and material evidence to reopen a claim for service connection for the cause of the veteran's death. Record (R.) at 5–17. For the reasons that follow, the Court will affirm the Board decision.

## I. Background

The veteran served on active duty in the U.S. Army from November 1948 to August 1952 and was a combat veteran of the Korean conflict. R. at 242. A November 1948 induction medical examination found no relevant abnormalities. R. at 60–61. In August 1950, he was shot in the left shoulder and the head. R. at 33. The latter gunshot penetrated the occipital bone and entered the brain, where the bullet remained lodged; during the subsequent surgery, a metal plate was inserted in his skull. R. at 100–01. He was returned to duty in April 1951 (R. at 186); he underwent additional treatment when his wound began to drain in December 1951 (R. at 172) and was again returned to duty in March 1952 (R. at 186). His separation examination noted: "Gun shot wound of head—IMS [incurred in military service]—WH [well-healed], NS [neurosurgery], ND [not disabling]". R. at 64.

In June 1953, the veteran filed an application for VA service-connected disability compensation or non-service-connected pension, claiming disability from gunshot wounds to his left shoulder and behind his left ear. R. at 237–40. A July 1953 VA clinical report revealed renewed treatment for a discharge from his head wound pursuant to the insertion of the plate. R. at 246. The report also noted some weakness in the left arm and left leg. *Ibid.* A VARO decision in June 1955 granted a 50% rating for damage to the skull resulting in insertion of the plate, a 30% rating for chronic brain syndrome, a 30% rating for homonymous hemianopsia, a 20% rating for osteomyelitis, and a 0% rating for a scar; the combined rating was 80% and the effective date was March 28, 1955. R. at 257–58. (Homonymous hemianopsia refers to a defect in either the left or right visual fields of both eyes; osteomyelitis refers to inflammation of bone. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 744, 1201 (28th ed. 1994).) Except for two periods of hospitalization, one to remove the metal plate in October 1955 and one for headaches in January and February 1958, for which his rating was temporarily increased to 100% (R. at 263, 267), these ratings continued for approximately the next 19 years.

In a letter to the veteran's service representative in August 1973, the veteran's wife wrote:

My husband draws 80% now and he has been trying to get help for his eyes, his teeth and the one leg which was paralyzed as a result of being shot in Korea. His eye as [sic] also part of his disability. [H]e would like a hearing on his disability[;] we believe he should get more than 80% as he can't work at all. He has a lot of trouble walking [and] seeing and he is dizzy a lot of the time. I am afraid he will pass out while I am working and the children who are home would be frightened to death.

In November 1973, the veteran's service representative submitted this August 1973 letter to VA in an effort to obtain an increased rating, noting that the veteran had become unemployable. R. at 291. A December 1973 statement of income and net worth identified May 1973 as the date the veteran had become totally disabled. R. at 295. Followup medical examinations in 1974 found, in addition to the wounds already described, "moderate spasticity of left upper [and] lower extremities" and diminished vision in the right eye. R. at 298–304. A February 1974 RO decision concluded:

Current VA exam results show that the veteran's service[–]connected conditions are static and no change in evaluation is warranted. The veteran was last employed in May 1973. From evidence of record, it is the determination of the Board that the veteran is individually unemployable because [ ] of his service[–]connected conditions.

R. at 307. The RO granted a total disability rating based on individual unemployability (TDIU) effective from November 1973, the date of the application for the increased rating. *Ibid.* A December 1980 RO decision continued the above evaluation. R. at 312.

The veteran died in September 1983; his death certificate listed the cause of death as "acute congestive heart failure" due to or as a consequence of "coronary insufficiency", in turn due to or a consequence of "severe occlusive coronary atherosclerosis". R. at 316. The death certificate also listed "generalized atherosclerosis" as another significant condition contributing to death. *Ibid.* In September 1983, the appellant applied for burial benefits (R. at 314, 319) and dependen-

cy and indemnity compensation (DIC) (R. at 331–34). In a supporting statement in that same month, she included an autopsy report and argued that the bullet that had remained lodged in the veteran's brain had contributed to his death. R. at 322. The autopsy report, although noting the presence of the bullet in the veteran's brain, recorded the same causes of death as had the death certificate. R. at 328.

An RO decision at the end of September 1983 denied service connection for the veteran's cause of death, concluding that "[b]asic entitlement under 38 U.S.C. [§ ] 410(b) is not established", and "[b]asic entitlement to benefits under 38 U.S.C. Chapter 35 [education benefits] is established." R. at 338–39. In letters to the appellant, dated in September and October 1983, the RO notified her of its award of burial benefits (Supplemental (Suppl.) R. at 1) and of its denial of DIC on the grounds that the cause of death was not service connected and that the veteran "[w]as not continuously rated totally disabled for a period of ten or more years immediately preceding death" (Suppl. R. at 6).

In October 1983, the appellant submitted another statement suggesting that her husband's cause of death was service connected and reporting that "he ha[d] always had severe headaches since our marriage." ⟨R. at 343. The RO treated the statement as a Notice of Disagreement (NOD) (R. at 346) and issued a Statement of the Case (SOC) in November 1983 (R. at 346–49). The SOC addressed only the RO denial of service connection for cause of death and did not address section 410(b) entitlement. *Ibid.* The appellant perfected her appeal by filing a VA Form 1–9 (Substantive Appeal to BVA). R. at 351.

In her appeal, the appellant's representative contended that the veteran's service-connected brain injuries had "adversely affected [his] ability to seek normal health care measures" and thereby contributed to his death. R. at 351. In December 1984, the BVA concluded that the available evidence did not establish that the veteran's service-connected disabilities had contributed to his death or that the recorded causes of death were service connected. R. at 371.

In July 1992, the appellant attempted to reopen her DIC claim, arguing that an award of DIC was justified because the veteran had been unable to work for more than ten years before his death, even though the TDIU rating had been in effect for just less than nine years and eleven months. R. at 376. A response from the RO stated that without new evidence to show treatment from May 1973 to November 1973 there was nothing to contradict the assignment of an effective date in November 1973 when the veteran had submitted his claim. R. at 379.

In a September 1992 NOD, the appellant contended that failure to award an earlier effective date for TDIU was CUE in the 1974 RO decision and that VA had breached its duty to assist the veteran in his earlier claim. R. at 382–83. A confirmed RO decision in February 1993 noted that the September 1983 rating had denied service connection for cause of death and basic entitlement under 38 U.S.C. § 410(b) (now 38 U.S.C. § 1318), found no new evidence, and concluded that the claim for benefits under section 1318 "is not successfully reopened." R. at 388. The RO issued an SOC in February 1993. R. at 390–98. The appellant's Substantive Appeal to the BVA argued that 38 U.S.C. § 5110(b)(2) required VA to assign an effective date up to a year preceding the filing of the claim if an increase in disability was then ascertainable. R. at 400. The appellant included a copy of the December 1973 statement of income and net worth (VA Form 21–527) (already part of the claims file, R. at 295) that had identified May 1973 as the date when the veteran became totally disabled. R. at 401. In a January 1994 presentation to the BVA, the appellant's representative emphasized the date recorded on that form and VA's obligation to assign the earliest ascertainable date within the year preceding the claim, and asserted that the appellant had never been denied entitlement under 38 U.S.C. § 1318. R. at 415. The representative also asked that VA fulfill its duty to assist by aiding the appellant in the production of records relating to the veteran's condition between May and November 1973. R. at 415.

In the February 6, 1995, BVA decision here on appeal, the Board concluded that the preponderance of the evidence was against the CUE claim asserting a failure to assign an effective date of May 1973 instead of November 1973. R. at 7. The Board also concluded that new and material evidence was necessary to reopen the appellant's claim, because the appellant's DIC claim was, under *Isenhart v. Derwinski*, 3 Vet.App. 177 (1992), encompassed within a claim for cause-of-death benefits (R. at 15), and that the appellant had not presented new and material evidence (R. at 7). A timely appeal to this Court followed, and oral argument was held on October 23, 1996.

## II. Analysis

The appellant has explicitly abandoned both the CUE claim raised before the BVA (Appellant's Brief (Br.) at 1) and, in response to the Secretary's brief (Reply Br. at 7), a claim relating to the denial of accrued benefits initially raised in her brief (Br. at 8). Thus, the only issue on appeal is whether the Board erred in requiring new and material evidence, which error would arise either because the appellant's DIC claim had never been adjudicated under 38 U.S.C. § 1318 or because the appellant was presenting a new claim under 38 U.S.C. § 5110(b)(2) for an earlier effective date for the veteran's TDIU rating.

### A. DIC and 38 U.S.C. § 1318

When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1995). Such a claim for DIC is generally treated as an original claim by the survivor, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran before his or her death. *See* 38 C.F.R. § 20.1106 (1996); *Zevalkink v. Brown*, 6 Vet.App. 483, 491 (1994), *aff'd* 102 F.3d 1236 (Fed.Cir.1996). A DIC claim must be well grounded under 38 U.S.C. § 5107(a). *See Johnson (Ethel) v. Brown*, 8 Vet.App. 423, 426 (1995); *see also Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table); *Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993). A veteran's

death is due to a service-connected disability when "such disability was either the principal or a contributing cause of death." *See* 38 C.F.R. § 3.312 (1994).

However, even if a service-connected condition did not cause or contribute to a veteran's death, the surviving spouse is entitled to receive DIC benefits *"as if* the veteran's death were service connected" (emphasis added) when a veteran meets the requirements in 38 U.S.C. § 1318 and 38 C.F.R. § 3.22 (1995) [hereinafter section 1318 DIC]. The appellant brings her claim on this latter section 1318 DIC basis. Section 1318(b) provides for the payment of DIC, as if the cause of death were service connected, where the veteran has died under the following conditions:

> [N]ot as the result of [his or her] own willful misconduct, and [where he or she] was in receipt of or entitled to receive (or but for the receipt of retired or retirement pay was entitled to receive) compensation at the time of death for a service-connected disability that either—
>
> > (1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death; or
> >
> > (2) if so rated for a lesser period, was so rated continuously for a period of not less than five years from the date of such a veteran's discharge or other release from active duty.

38 U.S.C. § 1318(b). The implementing regulation describes this section 1318 DIC entitlement as attaching where

> [t]he veteran was in receipt of or *for any reason (including* receipt of military retired or retirement pay or correction of a rating after the veteran's death based on *clear and unmistakable error* ) was not in receipt of but *would have been entitled to* receive compensation at the time of death for a service-connected disablement that either:
>
> > (i) Was continuously rated totally disabling by a schedular or unemployability rating for a period of 10 or more years immediately preceding death; or
> >
> > (ii) Was continuously rated totally disabling by a schedular or unemployability rating from the date of the veteran's

discharge or release from active duty for a period of not less than 5 years immediately preceding death.

38 C.F.R. § 3.22(a)(2) (1995) (emphasis added).

Hence, under applicable law and regulation, DIC may be awarded on four separate bases, each of which requires particular evidence—a regular service-connected-death basis under 38 U.S.C. § 1310 and three section 1318 DIC bases: (1) That the veteran was continuously rated totally disabled for 10 or more years immediately preceding death (38 U.S.C. § 1318(b)(1)); (2) that the veteran was continuously rated totally disabled for 5 or more years immediately preceding death if also so rated at the date of discharge (38 U.S.C. § 1318(b)(2)); or (3) that the veteran would have been entitled to receive the 100% compensation referred to in (1) or (2), above, at the time of his or her death but was not receiving it for some reason (38 U.S.C. § 1318(b)). The appellant contends that, because section 1318 DIC claims are premised on bases totally different from a regular service-connected-death DIC claim under 38 U.S.C. § 1310, and because (she argues) a section 1318 DIC claim had never before been adjudicated by VA, the BVA erred in requiring new and material evidence with regard to her current section 1318 claim. Br. at 4–5.

Section 1318 was originally codified at 38 U.S.C. § 410(b), enacted in 1978 when it was added to the existing section 410 of title 38, U.S.Code, by the Veterans' Disability Compensation and Survivors' Benefits Act of 1978. Pub.L. No. 95–479, § 204, 92 Stat. 1560, 1564 (1978). In October 1982, the Veterans' Compensation, Education, and Employment Amendments of 1982 amended section 410(b) to add "or entitled to receive" after "was in receipt of". Pub.L. No. 97–306, § 112, 96 Stat. 1429, 1432 (1982). In 1988, section 410(b) was deleted and recodified in its present form at section 418 of title 38 by the Veterans' Benefits Improvement Act of 1988. Pub.L. No. 100–687, § 1403, 102 Stat. 4105, 4130–31 (1988). Then, in 1991, as part of a general recodification, section 410 was redesignated as section 1310, and section 418

as section 1318, by the Department of Veterans Affairs Codification Act.Pub.L. No. 102–83, § 5, 105 Stat. 378, 406 (1991). Section 1318 was thus in existence at the time of the appellant's 1983 claim and was then codified in section 410. The Secretary correctly notes, and the appellant's counsel acknowledges in his reply brief, that 38 C.F.R. § 3.22 was also in existence at the time of the appellant's claim in 1983. *See* 48 Fed.Reg. 41,160, 41,160–61 (1983) (to be codified at 38 C.F.R. § 3.22) (adding "would have been entitled to receive" language, in regulation dated September 14, 1983, with October 1, 1982, effective date). Thus, the current statutory and regulatory provisions at 38 U.S.C. § 1318 and 38 C.F.R. § 3.22 were in full force on September 30, 1983, when the RO first decided the appellant's DIC claim.

■ Although the appellant correctly notes that when a statute creates a new substantive right that did not exist at the time of a prior, final, unfavorable adjudication, a claim under that new right is a new claim that does not require new and material evidence under 38 U.S.C. §§ 5108, 7104(b), 7105(c), *see Spencer v. Brown*, 4 Vet.App. 283, 289 (1993), *aff'd*, 17 F.3d 368 (1994), the history of 38 U.S.C. § 1318, its earlier codification at section 410, and the existence of 38 C.F.R. § 3.22 in 1983 make plain that no new substantive right has been created after the appellant's claim was first decided by the RO in 1983. Hence, if the section 1318 DIC claim that the appellant is now making was adjudicated in 1983, she would be required, as the BVA held, to present new and material evidence to reopen as to her section 1318 DIC claim—at least as to one denied on the same basis on which the appellant later brings a similar claim.

The 1983 RO decision in question stated: "Basic entitlement under 38 U.S.C. 410(b) is not established." R. at 339. Read in conjunction with the October 1983 RO notification letter, which stated as a reason for denial of DIC that the veteran "[w]as not continuously rated totally disabled for a period of ten or more years immediately preceding death" (Suppl.Rec. at 6), it is plain that the 1983 RO decision *did* adjudicate a DIC claim on the ten-year 100%–rating ba-

sis then embodied in section 410(b) and now in section 1318 and denied DIC on that basis. The appellant's NOD and the RO's SOC directed the appeal solely to the DIC claim based on service connection (R. at 343), and the 1984 BVA decision likewise denied DIC on that basis alone (R. at 368–72). Accordingly, the Court holds that the 1983 RO decision, which had considered and denied DIC entitlement under 38 U.S.C. § 410(b), became final, and new and material evidence is required in order to reopen as to a claim for DIC entitlement on that basis.

The appellant conceded at oral argument that there was no such evidence. Hence, the BVA decision will be affirmed on this issue— that this particular DIC claim under section 410(b) was not reopened.

### B. Application of 38 U.S.C. §§ 5110(b)(2) and 5110(g)

■ Even though there was plainly a 1983 RO determination under section 410(b), it is not clear from the mere citation to that provision in the 1983 RO decision and the 1983 RO-notification-letter explanation that the decision took into account the 1982 revision to section 410(b) that had added the words "or entitled to receive" or the amendment to 38 C.F.R. § 3.22, which had issued only sixteen days before the RO decision in question and three months after the appellant had filed her DIC claim in September 1983. This Court has recently held that it would not "presume that the RO did not properly discharge its official duties", particularly insofar as ROs were not subject before 1990 to the statutory requirement that they include in their decisions the reasons for denying a claim. *See Dolan v. Brown*, 9 Vet.App. 358, 362 (1996) (citing *Eddy v. Brown*, 9 Vet.App. 52, 58 (1996)); *see also Crippen v. Brown*, 9 Vet.App. 412, 420 (1996). On the other hand, the combination of the texts of the RO decision and the notification letter presents a strong case, on the face of these RO documents, for the conclusion that the RO decided only a section 1318 DIC claim on the *first* of the three bases for such a claim, by finding that the veteran had not in fact held a 100% rating for the requisite 10 consecutive

years before his death. *Cf. Mason (Sanger-netta) v. Brown,* 8 Vet.App. 44, 52–53 (1995) (holding that RO's failure to consider relevant evidence was clear on face of RO decision (because RO denied existence of evidence that did exist) and that such failure to consider is erroneous failure to decide claim based on review of entire evidence of record, as required by VA regulation); *Russell v. Principi,* 3 Vet.App. 310, 321 (1992) (en banc). (The appellant does not contend that the veteran was or would have been entitled to be rated totally disabled at the time of his discharge, so there is no possible question of section 1318 DIC eligibility based on the 5–year provision.) The Court need not decide this question, however, because even assuming that a basis exists for a new section 1318 DIC claim (for example, on a basis different from one previously denied, *cf. Isenhart, supra;* 38 C.F.R. § 20.1106 (preamble reading: "Except with respect to benefits under the provisions of 38 U.S.C. [§] 1318 . . .")) not subject to the new-and-material-evidence requirements, the appellant's earlier-effective-date argument fails in this case.

The appellant contends that the 1974 RO decision that granted TDIU with an effective date in November 1973 should not be dispositive of the effective-date issue because 1975 revisions to the law added 38 U.S.C. § 5110(b)(2), providing: "The effective date of an award of increased compensation shall be the *earliest date as of which it is ascertainable* that an increase in disability had occurred, if application is received within one year from such date." (Emphasis added.) *See* Veterans Disability Compensation and Survivor Benefits Act of 1975, Pub.L. No. 94–71, § 102, 89 Stat. 395, 396 (1975). Under section 5110(b)(2), the appellant argues, the veteran would have been entitled to an effective date up to one year prior to the submission of his November 1973 claim if it were "ascertainable" that an increase in disability had then occurred. *See generally Scott (Charles) v. Brown,* 7 Vet.App. 184, 188–89 (1994); *Quarles v. Derwinski,* 3 Vet.App. 129, 135 (1992). For his part, the Secretary contends that 38 U.S.C. § 5110(g) specifically prevents the application of this 1975 law to backdate a claim to 1973. The Secretary is correct on this point.

Section 5110(g) provides that where "compensation, [DIC], or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue." 38 U.S.C. § 5110(g); *see also* 38 C.F.R. §§ 3.114(a), 3.400(p) (1996). The questions at issue are whether any "new" substantive right that the veteran may have had under section 5110(b)(2), or that the appellant had under section 1318(b), by virtue of *Spencer, supra,* is constrained by section 5110(g) and, if so, how.

As an initial matter, the Court notes that the Secretary contends that the *only* way in which the appellant could possibly backdate the veteran's effective date for TDIU under section 1318(b) would be through a claim of CUE (presumably meaning the appellant's bringing a CUE claim that the veteran could have brought successfully during his lifetime under 38 C.F.R. § 3.105(a)). Br. at 11. The Secretary finds some support for this contention in the legislative history of the amendment of section 1318 and in Office of the General Counsel precedential opinions. *See* Explanatory Statement of Compromise Agreement, 128 Cong.Rec. H7777 (Sept. 28, 1982), *reprinted in* 1982 U.S.C.C.A.N. 3012, 3013–14 ("Both the House bill and the Senate amendment would amend section 410(b)(1) of title 38 [so that the DIC requirements would be met] . . . if the veteran would have been in receipt of such compensation for such period but for a clear and unmistakable error regarding the award of a total-disability rating"); VA Gen.Coun.Prec. 68–90 (July 18, 1990); VA Gen.Coun.Prec. 2–81 (May 21, 1981); *see also Damrel v. Brown,* 6 Vet.App. 242, 245 (1994) (citing 38 C.F.R. § 3.22(a)(2) for the proposition that a spouse would be entitled under section 1318 to DIC if the veteran "would have met the duration requirements . . . but for CUE"). However, such a CUE-claim limitation is contrary to the unrestricted words of section 1318 and the expansive language of 38 C.F.R. § 3.22(a)(2) (1995) ("the veteran was in receipt of or *for any reason* . . . would have been entitled to receive" (emphasis added))

and that regulation's use of a CUE claim as a nonexclusive example ("including") of how this could be done.

Because neither section 1318 nor its implementing regulation includes such a restriction on the plain meaning of the statutory language, the Court declines the Secretary's invitation to read one in by virtue of legislative history, especially where the implementing regulation did not purport to do so. *See Johnson (Duc Tu) v. Brown*, 9 Vet.App. 369, 371 (1996) ("In statutory interpretation, if 'the plain meaning of a statute is discernible, that plain meaning must be given effect.' *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995)"). As the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) stressed in deciding in *Gardner v. Brown* that VA could not by regulation add to an entitlement to disability compensation established under 38 U.S.C. § 1151 a VA-fault requirement that Congress had not included, "[t]he starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Gardner v. Brown*, 5 F.3d 1456, 1458 (Fed.Cir.1993), *aff'd*, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (internal punctuation omitted) (affirming *Gardner v. Derwinski*, 1 Vet.App. 584 (1991)). If there is any ambiguity in the statute, and the Court finds none, we note that the Supreme Court cautioned, in affirming this Court's and the Federal Circuit's *Gardner* decisions, that "interpretive doubt is to be resolved in the veteran's favor, see *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–221, n. 9, 112 S.Ct. 570, 574, n. 9, 116 L.Ed.2d 578 ... (1981)." *Gardner*, 513 U.S. at 118, 115 S.Ct. at 555; *see Allen v. Brown*, 7 Vet.App. 439, 446 (1995) (applying *Gardner* dictum to resolve interpretive doubt in favor of veteran). If the Secretary's CUE-limitation were to be read into the statute, two very unfair results would ensue for certain survivors. First, as to a survivor whose decedent had obtained a prior adjudication on the service-connection question, the survivor would be deprived of all benefit from the 1982 amendment if that prior adjudication had been made by the BVA (rather than

an RO). *See Smith (William) v. Brown*, 35 F.3d 1516, 1526 (1994) (BVA decisions may not be attacked under CUE regulation). Second, if the deceased veteran had never obtained an adjudication during his or her lifetime on the service-connection issue, then the survivor would have nothing to attack as CUE under 38 C.F.R. § 3.105(a) and would similarly be excluded from the relief afforded by the 1982 amendment to section 410(b).

In the case at hand, it is undisputed that under the law in 1974 the veteran could not have been awarded an effective date earlier than the date of his TDIU claim. Hence, entitlement to an effective date earlier than the date of that claim was not and could not have been under consideration in the 1974 RO decision. That would be the end of the matter under VA's interpretation of "entitled to receive" in section 1318(b) as requiring the survivor to stand in the shoes of the deceased veteran for the purposes of pursuing a CUE claim. A CUE claim is adjudicated under the law and the record at the time of the prior RO decision. *See Crippen*, 9 Vet.App. at 418 (quoting *Russell, supra*). Because section 5110(b)(2) was not in effect at the time of the 1974 RO decision, there could have been no CUE in that decision based on the provisions of that section.

■ However, as we interpret the applicable law and regulation in section 1318(b) and § 3.22(a)(2), a CUE claim is not the sole way for a survivor to show the veteran's entitlement as of the time of the veteran's death. Rather, the survivor is given the right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue—here the effective date of the award of the TDIU rating—based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable. *See Bell v. Derwinski*, 2 Vet. App. 611, 612–13 (1992) (per curiam order); *cf. Hayes (Mildred) v. Brown*, 4 Vet.App. 353, 358–61 (1993) (although 38 U.S.C. § 5121(a) limits survivor's accrued-benefits claim to consideration of evidence in file at veteran's death, that limitation is qualified by

section 5121(c) right to submit evidence within one year after death and VA Manual M21–1 provisions (¶ 5.25(a)) deeming to be part of a veteran's file at death certain service department and VA medical and other records). In the situation at hand, subsequent to the 1975 enactment of section 5110(b)(2), the hypothetical veteran bringing a claim for increased compensation theoretically could have been awarded an effective date of any date, within one year prior to the filing of his claim, when an increase in disability was "ascertainable"; section 5110(b)(2) plainly applies after its enactment to the hypothetical veteran who, claiming an increase in disability, is awarded a TDIU rating. However, analysis of the appellant's claim also requires two separate considerations of the section 5110(g) limitation that when "compensation [or DIC] . . . is awarded or increased *pursuant to any Act or administrative issue*, the effective date of such award or increase shall . . . not be earlier than the effective date of the Act or administrative issue." 38 U.S.C. § 5110(g) (emphasis added).

First, DIC can itself be awarded pursuant to section 1318 only via section 1310. *See Spencer*, 4 Vet.App. at 290 ("use of the words 'pursuant to' clearly indicates that the benefits of this provision adhere only where the 'Act or administrative issue' is one which provides a substantive basis for establishing entitlement to benefits"). Prior to 1982, section 1318 allowed DIC to be paid, in cases such as this, only if the veteran had *in fact* been in receipt of a 100% service-connected rating for the previous ten years. The 1982 addition of the words "or entitled to receive" to then section 410 created a new substantive right for the purposes of *Spencer, supra.* Under the amended section, the spouse of a veteran who would have been entitled to have been in receipt of a 100% service-connected rating (including a TDIU rating) for 10 or more consecutive years immediately preceding the veteran's death was made eligible for section 1318 DIC. Section 5110(g) restricts the application of the amended section 410(b) (now section 1318) so as to prevent an effective date being assigned for an award of DIC made pursuant to this provision to a date no earlier than the date of its October 1982 enactment. *See Viglas v.*

*Brown,* 7 Vet.App. 1, 3 (1994) ("the language of section 5110(g) is clear in explicitly precluding award of retroactive benefits beyond the one-year period provided for in that section"). Thus, section 1318 and its implementing regulation in § 3.22(a) allow the appellant to obtain a determination of whether the veteran hypothetically would have been entitled to receive, before his death in September 1983, an earlier effective date for his TDIU rating under the then applicable effective-date requirements, but the effective date of any resultant DIC awarded could not be earlier than October 1982.

Second, section 5110(g) also restricts the application of the section 5110(b)(2) provision that an award of increased compensation be made effective as of any date within the year before a claim was filed if it is "ascertainable that an increase in disability had occurred". *See also* 38 C.F.R. § 3.400(*o*)(2). Because section 5110(b)(2) was enacted in 1975, section 5110(g) precludes the use of section 5110(b)(2)'s provisions to award a TDIU effective date to the hypothetical veteran of any date earlier than the date of the 1975 enactment of section 5110(b)(2). *See McCay v. Brown,* 9 Vet.App. 183, 187 (1996) ("[t]he plain language of section 5110(g) prohibits a retroactive award of benefits prior to the effective date of the legislation" in question), *aff'd,* 106 F.3d 1577 (Fed.Cir. 1997); *Gold v. Brown,* 7 Vet.App. 315, 320 (1995); *Viglas, supra; see also* 38 C.F.R. § 3.114(a) (1995) (claims received within one year after administrative act or issue may not be granted effective date before the date of administrative act or issue). In short, in light of section 5110(g), in no way can the appellant, as the hypothetical veteran as of 1982 after enactment of the section 410(b) amendment, use a 1975 enactment (either via a CUE claim or an original claim) to arrive at an effective date in 1973.

In view of the foregoing analysis, to the extent that the BVA might have erred in requiring new and material evidence to support the appellant's claim, any such error was not prejudicial to the appellant because in no event could she have been awarded section 1318 DIC. Where an appellant has not been harmed by an error in a Board

determination, the error is not prejudicial. *See* 38 U.S.C. § 7261(b) ("the Court shall take due account of the rule of prejudicial error"); *Edenfield v. Brown*, 8 Vet.App. 384, 390–91 (1995) (en banc).

### III. Conclusion

The Court notes that the Secretary's brief acknowledges, and the Court agrees, that this is a "sympathetic case" that could warrant the application of equitable relief by the Secretary pursuant to 38 U.S.C. § 503. Br. at 16. Such relief is committed to the discretion of the Secretary and cannot be granted by this Court; nor is the Secretary's denial of such relief subject to review in this Court. *See McCay v. Brown*, 8 Vet.App. 378, 383 (1995); *Darrow v. Derwinski*, 2 Vet.App. 303 (1992).

Upon consideration of the record and the pleadings of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 1310, 1318, 5107(a), 5108, 5110(b)(2), (g), 7104(a), (d)(1), 7105(c), 7261(b); 38 C.F.R. §§ 3.5(a), 3.22(a), 3.105(a), 3.114(a), 3.400(o). Therefore, the Court affirms the February 6, 1995, BVA decision as to its disallowance of the appellant's DIC claim. *See Edenfield*, 8 Vet.App. at 391.

AFFIRMED.