﻿Citation Nr: 19159010
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 18-33 080
DATE: July 30, 2019

ORDER

The request to reopen the claim of service connection for type II diabetes mellitus is granted.

Service connection for type II diabetes mellitus is granted

Service connection for T-cell non-Hodgkin’s lymphoma is granted.

Service connection for cause of death is granted.

Entitlement to dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318 is dismissed.

FINDINGS OF FACT

1. A February 2006 rating decision denied service connection for type II diabetes mellitus on the basis that there was no nexus to service, specifically no evidence which shows actual exposure to herbicides while in service. The Veteran did not appeal the decision and he did not submit additional evidence within a year after the decision; therefore, the decision is final.

2. Since the February 2006 rating decision, the Veteran submitted a May 2012 statement which asserts he was also exposed to herbicides while spending the night on the defoliated perimeter of Ubon Royal Thai Air Force Base (RTAFB), Thailand after a “sapper” attack in July 1969. Moreover, the Appellant, the Veteran’s substituted wife, submitted a June 2018 statement and supporting evidence, asserting that the Veteran was also exposed to herbicides while assembling and loading bombs onto B-52s. The supporting evidence is a 1973 U.S Air Force report that shows the munitions, maintenance, and storage area was within 100 yards from the perimeter at U-Tapao RTAFB, Thailand. This evidence is relevant and probative as to the issue of service connection for diabetes as it provides additional details as to exposure to herbicides in service which were not of record at the time of the prior denial.

3. Resolving reasonable doubt in the Veteran’s favor, his diabetes was due to in-service exposure to herbicides while serving as a weapons mechanic near the perimeter at U-Tapao RTAFB, Thailand and on the perimeter after a “sapper” attack at Ubon RTAFB, Thailand.

4. Resolving reasonable doubt in the Veteran’s favor, his T-cell non-Hodgkin’s lymphoma was due to in-service exposure to herbicides while serving as a weapons mechanic near the perimeter at U-Tapao RTAFB, Thailand and on the perimeter after a July 1969 “sapper” attack at Ubon RTAFB, Thailand.

5. The Veteran died in January 2014; the principle cause of death was T-cell non-Hodgkin’s lymphoma.

6. By virtue of the grant of service connection for the cause of the Veteran’s death herein, the claim for entitlement to DIC pursuant to 38 U.S.C. § 1318 is rendered moot.

CONCLUSIONS OF LAW

1. The February 2006 rating decision is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. §§ 20.302, 20.1103 (2018).

2. The evidence received since the February 2006 rating decision, which denied service connection for diabetes, is new and material, and the claim is reopened. 38 U.S.C. §§ 5108, 7105 (2012); 38 C.F.R. § 3.156 (2018).

3. The criteria for entitlement to service connection for diabetes have been met. 38 U.S.C. §§ 1110, 1116, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2018).

4. The criteria for entitlement to service connection for T-cell non-Hodgkin’s lymphoma have been met. 38 U.S.C. §§ 1110, 1116, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2018).

5. Service connection for cause of death is warranted. 38 U.S.C. §§ 1110, 1310, 5103(a), 5103A (2012); 38 C.F.R. §§ 3.303, 3.312(a)-(b) (2018).

6. The Appellant’s claim of entitlement to DIC benefits under 38 U.S.C. § 1318 is dismissed as moot. 38 U.S.C. § 1318 (2012); 38 C.F.R. § 3.22 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 1967 to November 1971. The Veteran died in January 2014. The appellant is the Veteran’s surviving spouse.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from November 2012 and June 2014 rating decisions by the Department of Veterans Affairs (VA).

The Board notes that the June 2014 rating decision on appeal and the May 2018 statement of the case (SOC) reflect that the service connection issues on appeal are for the purpose of entitlement to accrued benefits. However, in March 2018 the RO stated that a substitution determination was made and that the appellant was a proper substitute. Additionally, the RO requested that the appellant provide additional evidence after the death of the Veteran. Since the Veteran’s claims for entitlement to service connection for diabetes and T-cell non-Hodgkin’s lymphoma were pending at the time of his death and the appellant has been determined to be a proper substitute the service connection claims are not for accrued benefits purposes.

Service Connection

1. Service connection for diabetes mellitus is granted.

2. Service connection for T-cell non-Hodgkin’s lymphoma is granted.

The Veteran contends that his diabetes and non-Hodgkin’s lymphoma was a result of exposure to herbicides while serving at Ubon RTAFB and U-Tapao RTAFB in Thailand. Specifically, he asserts that (1) he assembled and loaded toxic bombs/ pods onto B-52s/aircraft about 100 yards from the perimeter of U-Tapao; (2) he spent the night in a “barren defoliated dirt bunker” along the perimeter of Ubon after a July 1969 “sapper” attack; (3) he was exposed to “toxic chemicals,” to include AO, when loading/unloading toxic tanks/canisters/drums onto aircraft; and (4) he “stepped foot on Vietnam soil” when he flew into Tan Son Nhut Air Base near Saigon on a military commercial flight out of San Francisco in 1968 and when he was sent TDY to several “primitive bases” while stationed in Thailand. See June 2018 Form 9; May 2012 statement; July 2006 statement; July 2005 claim.

Based on a review of the evidence of record, the Board finds that service connection for diabetes and non-Hodgkin’s lymphoma is warranted. As detailed below, the evidence is at least in equipoise as to whether the Veteran was exposed to herbicides during active duty service.

Service connection may be granted for a disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C. § 1110. Generally, service connection requires (1) the existence of a present disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Notwithstanding the lack of evidence of disease or injury during service, service connection may still be granted if all of the evidence, including that pertinent to service, establishes that the disability was incurred in service. See 38 U.S.C. § 1113(b); 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 503 (1992).

Lay assertions may also serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

The benefit of the doubt is given to the Veteran when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Additionally, if a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases, including prostate cancer, shall be service connected if it becomes manifest to a degree of 10 percent disabling or more at any time after service. 38 C.F.R. § 3.307(a)(6). This presumption of service connection will attach, even in the absence of any evidence of the disease while in service, provided that the rebuttable presumption provisions of 38 U.S.C. § 1113 and 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e).

As an initial matter, the Veteran’s post-service medical records reflect that he has been diagnosed with diabetes and T-cell non-Hodgkin’s lymphoma in May 2013, which is among the conditions associated with exposure to herbicide agents under 38 C.F.R. § 3.309(e). See also May 2012 and July 2012 private treatment records. Thus, the pertinent question is whether the Veteran was, in fact, exposed to herbicides during his active duty service.

The Veteran’s service personnel records show that he served as a weapons mechanic/munitions specialist from July 1968 to July 1969, at the Ubon RTAFB, Thailand, and from April 1971 to November 1971, at the U-Tapao RTAFB, Thailand.

The Veteran asserts, as described above, that he was exposed to herbicides on the base perimeters. In support of his assertions, the Veteran has provided (1) a 1973 Project CHECO South East Asia Report showing that the munitions, maintenance, and storage (MMS) area at U-Tapao RTAFB was about 100 yards from the perimeter in January 1972 (approximately a month after the period in which the Veteran was stationed at U-Tapao) and (2) an August 2005 statement from an airman (material handler) who was stationed at Ubon RTAFB from 1968 to 1969 that corroborates a “sapper” attack occurred in July 1969 and the trees on the perimeter of the base were denuded. 

VA has determined that there was use of herbicides on the fenced-in perimeters of military bases in Thailand for the purpose of eliminating vegetation and ground cover for base security purposes. See VBA Manual M21-1, IV.ii.1.H.5.b. Special consideration of herbicide exposure on a facts-found or direct basis should be extended to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. Id. This allows for presumptive service connection of the diseases associated with herbicide exposure. Id.

Under the procedures outlined in the manual, if a Veteran served at the RTAFBs of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat or Don Muang during the Vietnam Era as a security policeman, security patrol dog handler, member of the security police squadron, or otherwise served near the air base perimeter, as shown by evidence of daily work duties, performance evaluations, or other credible evidence, then herbicide exposure should be conceded on a direct or facts-found basis. Id. This includes a verification attempt through the United States Army and Joint Services Records Research Center (JSRRC). Id.

In October 2012, the RO determined that the information required to verify service in the Republic of Vietnam or Agent Orange exposure during military was insufficient to send to the JSRRC or the National Archives and Records Administration (NARA).

Although there is no record of assignment to perimeter duty, the Board finds the Veteran’s consistent assertions regarding time spent near the perimeter of the RTAFBs in Ubon and U-Tapao to be credible. Further, the Veteran provided documentation indicating that he likely worked at times close to the perimeter of U-Tapao RTAFB and spent the night on the perimeter of Ubon RTAFB near herbicide agents. Therefore, as there is no basis on which to question the credibility of the Veteran and no evidence in the record to contradict his allegations of perimeter contact, the Board finds that the Veteran was exposed to herbicide agents while he was stationed at the RTAFBs in Ubon and U-Tapao, Thailand.

Affording the Veteran the benefit of the doubt, the Board finds that he was exposed to herbicides while serving in Thailand and that his diabetes and non-Hodgkin’s lymphoma can be presumed to be related to herbicide exposure in service. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

3. Service connection for cause of death is granted.

Benefits may be awarded when the Veteran died from a disability deemed to be related to a period of active service from which he received a qualifying discharge. 38 U.S.C. § 1310(b). The Veteran’s death will be considered to have been due to a service-connected disability when there is evidence that the service-connected disability was either the principal or contributory cause of death. 38 C.F.R. § 3.312(a).

The Veteran’s January 2014 death certificate reflects that he died from lymphoma. There is no evidence suggesting a different cause of death. As noted above, the Veteran is now service-connected for non-Hodgkin’s lymphoma. As a result, service connection for cause of death is warranted on a presumptive basis.

4. Entitlement to DIC under 38 U.S.C. § 1318 is dismissed.

Under 38 U.S.C. § 1318, VA death benefits may be paid to a deceased Veteran’s surviving spouse in the same manner as if the Veteran’s death is service-connected, even though the Veteran died of nonservice-connected causes. In essence, 38 U.S.C. § 1310 and 38 U.S.C. § 1318 provide separate and alternative methods of obtaining VA dependency and indemnity compensation. See generally, Green v. Brown, 10 Vet. App. 111, 114-5 (1997).

CONTINUED ON NEXT PAGE

Because in this decision the Board has granted service connection for the cause of the Veteran’s death under the provisions of 38 U.S.C. § 1310, the matter of the appellant’s alternative claim of entitlement to DIC benefits under 38 U.S.C. § 1318 is rendered moot. Accordingly, the issue of entitlement to DIC benefits under 38 U.S.C. § 1318 is dismissed as no benefit remains to be awarded and no controversy remains. See generally, Swan v. Derwinski, 1 Vet. App. 20, 22-23 (1990).

 

E. I. VELEZ

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. Roe, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.