Citation Nr: 1749202 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 09-09 325 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for pes planus.

2. Entitlement to service connection for bilateral detached retinas.

3. Entitlement to service connection for left ankle arthritis.

4. Entitlement to an initial compensable evaluation for right trigger fingers/Dupuytren's contracture.

5. Entitlement to an initial compensable evaluation for left trigger fingers/Dupuytren's contracture.

6. Entitlement to an effective date prior to November 27, 2002 for service connection of chloracne.

7. Entitlement to an effective date prior to August 2, 2006 for service connection of tibial tendon dysfunction. 

8. Entitlement to an effective date prior to October 26, 2006 for service connection of obstructive sleep apnea. 

9. Entitlement to an effective date prior to July 28, 2009 for a 100 percent combined evaluation.

10. Entitlement to an evaluation in excess of 10 percent for tibial tendon dysfunction.

11. Entitlement to an evaluation in excess of 50 percent for obstructive sleep apnea.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Matthew Miller, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1968 to October 1972 and from January 1977 to July 1980.

This appeal initially came before the Department of Veterans Affairs (VA) Board of Veterans' Appeals (Board) from rating decisions of the VA Regional Offices (RO) in Roanoke, Virginia and Winston-Salem, North Carolina that denied the issues listed on the title page of this decision. 

The Veteran was afforded a personal hearing in August 2014 in Washington, DC before the undersigned Veterans Law Judge. The transcript is of record. The Veteran currently has a combined 100 percent disability rating, effective July 28, 2009. He has also been assigned special monthly compensation for the loss of use of a creative organ.

In a May 2015 decision, the Board reopened and remanded the Veteran's claim for pes planus, and assigned effective dates of October 26, 2006 for the Veteran's left hand trigger fingers/Dupuytren's contracture; August 6, 2007 for the Veteran's right hand trigger fingers/ Dupuytren's contracture; November 27, 2002 for the Veteran's chloracne; and April 22, 2003 for the Veteran's posttraumatic stress disorder (PTSD). Additionally, the Board remanded the issues of entitlement to service connection for bilateral detached retinas, left ankle arthritis, obstructive sleep apnea, tibial tendon dysfunction, and entitlement to an initial compensable evaluation for the Veteran's left and right trigger fingers/Dupuytren's contracture for additional evidentiary development. 

As a result of development, a May 2016 rating decision granted entitlement to service connection for sleep apnea with an evaluation of 50 percent, effective October 26, 2006 and entitlement to service connection for tibial tendon dysfunction with an evaluation of 10 percent, effective August 2, 2006.

Also, while development was ongoing, the Veteran appealed the Board's decision to assign an effective date of November 27, 2002 for the Veteran's chloracne to the United States Court of Appeals for Veterans Claims (Court). In a June 2016 decision, the Court vacated and remanded the Board's decision as to the effective date issue for compliance with the instructions in the opinion. This issue, along with those included in the Board's May 2015 remand and the remaining issues listed on the title page have since returned to the Board for further consideration.

The Board observes that the Veteran has filed a notice of disagreement at the RO concerning entitlement to special monthly compensation based on aid and attendance, as shown in the Veterans Benefits Management System (VBMS) electronic claims file. Such appeal is contained in the Veterans Appeals Control and Locator System (VACOLS) as an active appeal at the RO. While the Board is cognizant of the Court's decision in Manlincon v. West, 12 Vet. App 238 (1999), the Board finds that in this case, unlike in Manlincon, the RO has fully acknowledged the notice of disagreement and is currently processing the appeal. As such, this issue is not before the Board at this time.

This appeal was processed using the Virtual VA and VBMS paperless claims processing systems. Any future consideration of this appellant's case should take into account the existence of these records. 
 
The issues of entitlement to an effective date prior to August 2, 2006 for tibial tendon dysfunction, entitlement to an effective date prior to October 26, 2006 for obstructive sleep apnea, entitlement to an effective date prior to July 28, 2009 for a 100 percent combined evaluation, entitlement to an evaluation in excess of 10 percent for tibial tendon dysfunction, and entitlement to an evaluation in excess of 50 percent for obstructive sleep apnea are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's pes planus was clearly and unmistakably in existence prior to service and was clearly and unmistakably not aggravated by his service.

2. The preponderance of the evidence is against a finding that the Veteran has a current bilateral detached retinas disability that had an onset in service, or is otherwise related to active service or to a service-connected disability.

3. The preponderance of the evidence is against a finding that the Veteran has been diagnosed with left ankle arthritis.

4. At no time during the period on appeal were the Veteran's right index trigger fingers/Dupuytren's contracture manifest by a gap one inch (2.5cm) or more between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, or by extension limited by more than 30 degrees.

5. At no time during the period on appeal were the Veteran's left index trigger fingers/Dupuytren's contracture manifest by a gap one inch (2.5cm) or more between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, or by extension limited by more than 30 degrees.

6. A claim of entitlement to service connection for chloracne was received on November 27, 2002; however, the Veteran met all eligibility criteria for service connection for chloracne prior to February 6, 1991. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for pes planus have not been met. 38 U.S.C.A. §§ 1110, 1111, 1131, 1132, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.306 (2016).

2. The criteria for entitlement to service connection for a bilateral retinal detachment disability, to include as secondary to service-connected disabilities, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.310 (2016).

3. The criteria for entitlement to service connection for left ankle arthritis, to include as secondary to service-connected disabilities, have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 1137, 1154, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309(a), 3.310 (2016)

4. The criteria for an initial compensable disability evaluation for right trigger fingers/Dupuytren's contracture have not met or approximated for any period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.27, 4.31, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5228, 5229, 5230 (2016). 

5. The criteria for an initial compensable disability evaluation for left trigger fingers/Dupuytren's contracture have not met or approximated for any period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.27, 4.31, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5228, 5229, 5230. 

6. With resolution of reasonable doubt in the Veteran's favor, the criteria for an effective date of November 27, 2001, but no earlier, for the grant of service connection for chloracne are met. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. §§ 3.114, 3.400 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2014) sets forth VA's duties to notify and assist a claimant with the evidentiary development of a claim for compensation or other benefits. See also 38 C.F.R. §§ 3.102, 3.159 and 3.326 (2016). VCAA notice must, upon receipt of a complete or substantially complete application for benefits, inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that the claimant is expected to provide; and (3) that VA will obtain on his behalf. The Veteran has been provided satisfactory and timely VCAA notice in advance of the rating decision on appeal.

VA has also fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate his claim, and, as warranted by law, affording VA examinations. Currently, there is no evidence that additional records have yet to be requested, or that additional examinations are in order. Moreover, there is currently no error or issue which precludes the Board from addressing the merits of the Veteran's appeal.

The Veteran's statements in support of the claim are of record, including testimony provided at the hearing before the undersigned Veterans Law Judge. The Board hearing focused on the elements necessary to substantiate his claim and the Veteran has demonstrated that he had actual knowledge of the elements necessary to substantiate the claim for benefits. Thus, the material issues on appeal were fully developed in accordance with 38 C.F.R. § 3.103(c) (2016).

Pursuant to the Board's May 2015 remand, the AOJ obtained pertinent and outstanding treatment records and scheduled the Veteran for VA examinations which were responsive to the questions asked of the examiners. The AOJ then issued a supplemental statement of the case in March 2017. Based on the foregoing actions, the Board finds that there has been substantial compliance with the Board's prior remand. Stegall v. West, 11 Vet. App. 268 (1998).

Finally, in reaching this determination, the Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the Veteran's claim, and what the evidence in the claims file shows, or fails to show, with respect to this claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Legal Principles - Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999).

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(b); Allen v. Brown, 7 Vet. App. 439 (1995).

Arthritis, if manifest to a degree of 10 percent within one year after separation from active duty, may be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. Alternatively, a nexus to service may be presumed where there is continuity of symptomatology since service. Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013).

A veteran is presumed to have been in sound condition when accepted for service. See 38 U.S.C.A. § 1111. That presumption is rebutted if a disorder is noted at service entrance, or where clear and unmistakable evidence shows that disability pre-existed service and was not aggravated by such service. 38 C.F.R. § 3.304(b).

Additional laws and regulations apply when there is evidence that a disability preexisted service. A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 C.F.R. § 3.306. 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).


Pes Planus

The Veteran seeks entitlement to service connection for pes planus. After weighing the evidence, the Board concludes that the more probative evidence is against the Veteran's claim. 

The Board acknowledges that the Veteran's service treatment records show that on examination in June 1968 for service entry, the Veteran was noted to have a defect of pes planus with mild eversion. While being treated for another foot problem, moderate bilateral pes planus was recorded in June 1970. A notation of pes planus was also referenced in May 1979. 

The Veteran's claim was originally denied in August 2005, and his claim was later reopened in the Board's May 2015 decision. 

The Board notes that the Veteran has received some VA and private treatment for this condition.

The record includes an August 2008 medical report from Dr. F .R. Poulun, a podiatrist, who stated that the Veteran had severe pes valgo planus. It was related that "This is to confirm that his [Veteran's] years of military service could have contributed to conditions with respect to his feet." 

In August 2014, the Veteran testified that as the result of the rigors of service, he had to wear arch plates in his shoes standing guard duty as a military policeman. He related that he had flat feet at service entrance that was worsened by active duty. He stated that he had foot problems during his first tour of duty and that he had obtained arch supports during his second tour of duty.

Pursuant to the Board's May 2015 remand, the Veteran was afforded another VA examination in January 2016. The Veteran complained of foot pain with weight bearing activities. Upon examination, there was pain with use of the feet, with pain accentuated on use as well as callouses. There was no pain with manipulation and no swelling. Orthotics were reported to be in use bilaterally with evidence of decreased longitudinal arch height with weight bearing. There was no extreme tenderness of the plantar surfaces, no evidence of marked deformity, no marked pronation, no weight bearing line falling over or medial to the great toe, no alteration of weight bearing line, in inward bowing of the Achilles tendon, and no marked inward displacement of either feet. There was also no evidence of additional contributory factors of pain, weakness, fatigability, or incoordination from flare up or that significantly limits functional ability. The examiner determined that the Veteran's pes planus, which clearly and unmistakably existed prior to service, was not aggravated beyond its natural progression by an in service event, injury or illness. The examiner explained that the Veteran's records, including his entrance examination, re-enlistment examination, and January 1992 reserves examination were not found to present evidence of any permanent worsening of the preexisting pes planus between the time of initial enlistment and final separation that is considered beyond a natural progression. 

The Board notes that there is a difference of opinion among the medical professionals. Here, there are legitimate reasons for accepting the VA examiner's unfavorable medical opinion over the August 2008 medical report from the Veteran's podiatrist. It does not appear that the podiatrist had access to the Veteran's claims file including his service treatment records and VA treatment records. Further, the podiatrist merely suggested that the Veteran's military service could have contributed to his pes planus. 

Medical opinions are regarded as more probative when they include clear conclusions and supporting data with a reasoned analysis connecting the data and the conclusions. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). The January 2016 examiner's opinion clearly detailed the Veteran's current condition and reasons why the Veteran's military service clearly and unmistakably did not aggravate the condition. The Board finds this VA opinion both credible and probative.

The Board must also consider the Veteran's own opinion that his pes planus was aggravated by his active service. In this case, the Board does not find him competent to provide an opinion regarding the permanent worsening (aggravation) of his condition as this question is of the type that the courts have found to be beyond the competence of lay witnesses. Lay statements may be competent to support a claim for service connection by supporting the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Some medical issues, however, require specialized training for a determination as to diagnosis and causation, and such issues are, therefore, not susceptible of lay opinions on etiology, and the statements of the Veteran therein cannot be accepted as competent medical evidence.

For the above reasons, the Veteran's claim is denied. In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. 38 U.S.C.A. § 5107.

Bilateral Detached Retinas

The Veteran seeks entitlement to service connection for bilateral detached retinas, to include as secondary to service-connected diabetes mellitus type II. 

The Board notes that the Veteran has received some VA and private treatment for this condition.

The record reflects that the Veteran was afforded a VA examination in October 2012 for glaucoma where it was noted that he did not currently have retinal detachment although he had surgery for such in the past. Essentially, the examiner determined that any retinal detachment had resolved. 

In August 2014, the Veteran testified to the effect that there was a higher percentage of detached retinas in people that were diabetic and as such, he had detached retinas secondary to diabetes mellitus, type II. He related that doctors had told him this as well.

Pursuant to the Board's May 2015 remand, the Veteran was afforded a VA examination in February 2016. The examiner provided a diagnosis of previous bilateral retina detachment, along with current diagnoses of age related cataracts and pigmentary glaucoma. The examiner remarked that he could see no sign of recurrence of the Veteran's retina detachments. 

In January 2017, an addendum opinion was obtained. The examiner clarified, that after a review of the Veteran's VBMS and Virtual VA claims file, that there is "no evidence" that Veteran's detached retinas have recurred. 

As noted above, service connection requires a showing of a current disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). A current disability is shown if the claimed condition is demonstrated at the time of the claim or while the claim is pending. McClain v. Nicholson, 21 Vet. App. 319 (2007). 

The Veteran is competent to report his symptoms of vision problems. However, an underlying disability related to bilateral detached retinas has never been identified during the current appeal period. The Board also points to the fact that the Veteran is already service-connected for glaucoma and nuclear sclerosis, which is a separately rated eye disability. There is no other competent medical evidence of record, VA or private, of bilateral detached retinas during the applicable appeal period.

In essence, the evidence of a current diagnosis of a bilateral detached retinas disability is limited to statements from the Veteran and general complaints of vision problems. The Board finds that diagnosing a disability related to the eyes requires medical expertise and knowledge because such a diagnosis involves clinical testing and evidence which is beyond the scope of observable symptoms. Thus, while the Veteran is competent to report his experience and symptoms in service and thereafter, his reports are not competent evidence of a diagnosis of bilateral retinal detachment disability. 38 C.F.R. § 3.159(a)(1), (2).

In light of the absence of any competent evidence of a current bilateral retinal detachment disability or residuals of the reattachments, the claim must be denied. In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. 38 U.S.C.A. § 5107.

Left Ankle Arthritis

The Veteran seeks entitlement to service connection for left ankle arthritis, to include as secondary to service-connected diabetes mellitus type II. 

The Board notes that the Veteran has received some VA and private treatment for his ankle. 

In August 2014, the Veteran testified that he continues to experience ankle pain. He stated that his ankle injury may have been related to a jogging accident in 2005. He indicated that he had received several MRIs where an ankle disability was identified, including a tear to his ankle tendon. 

The Board previously remanded the Veteran's claim for additional development, to include another VA examination. This examination was performed in January 2016. The examiner provided a diagnosis of chronic tear of posterior tibial tendon with residual pain, dated 2009. The examiner found no arthritis was present. The examiner explained that the Veteran's tibial tendon tear was related to a post-service injury from 2005. 

As discussed above, the Veteran has since been granted service connection for tibial tendon dysfunction with a 10 percent evaluation, effective August 2, 2006. The claim was granted on the basis of being proximately due to his service-connected diabetes. Left ankle pain was included when rating this disability. Moreover, the Veteran has since filed a notice of disagreement with his tibial tendon dysfunction evaluation and effective date, which will be discussed in the Remand portion below.

In sum, the Board finds that left ankle arthritis is not presently documented, nor was it documented within one year of discharge from service. Although the Veteran is competent to report his ankle pain, he is not competent to diagnose arthritis. His ankle pain has also been separately rated under another left ankle disability. 

For the above reasons, the Veteran's claim is denied. In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. 38 U.S.C.A. § 5107.

Legal Principles - Increased Evaluations

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

While it is necessary to consider the complete medical history of the Veteran's condition in order to evaluate the level of disability and any changes in condition, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991); Francisco v. Brown, 7 Vet. App. 55 (1994).

In deciding the Veteran's increased evaluation claim, the Board has considered the determinations in Fenderson v. West, 12 Vet. App. 119 (1999) and Hart v. Mansfield, 21 Vet. App. 505 (2007), and whether the Veteran is entitled to an increased evaluation for separate periods based on the facts found during the appeal period.

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

In addition, when assessing the severity of a musculoskeletal disability that, as here, is at least partly rated on the basis of limitation of motion, VA must also consider the extent to which the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ("flare-ups") due to symptoms such as pain. See also 38 C.F.R. §§ 4.40, 4.45.

Right and Left Trigger Fingers/Dupuytren's Contracture

The Veteran seeks an initial compensable evaluation for his service-connected right and left trigger fingers/Dupuytren's contracture. Essentially, he contends that his condition is more severe than presently evaluated and that his symptoms include chronic hand pain and loss of grip strength. 

An initial noncompensable evaluation was assigned for each service-connected disability under Diagnostic Code 5229, which rates limitation of motion of the index and long fingers. For reasons that will become clear below, the Board will address Diagnostic Codes 5228, 5229, and 5230 together. Limitation of motion of the thumb is rated under Diagnostic Code 5228. 38 C.F.R. § 4.71a, Diagnostic Code 5228. A 10 percent evaluation is assigned when there is a gap of one to two inches between the thumb pad and the fingers, with the thumb attempting to oppose the fingers. A 20 percent evaluation is assigned when there is a gap of more than two inches between the thumb pad and fingers, with the thumb attempting to oppose the fingers. Id. Limitation of motion in the index or long finger is rated under Diagnostic Code 5229. 38 C.F.R. § 4.71a, Diagnostic Code 5229. A 10 percent evaluation is assigned when there is a gap of one inch or more between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, or; with extension limited by more than 30 degrees. A gap of less than one inch is noncompensable. Id. Limitation of motion in the ring finger or little finger is noncompensable. 38 C.F.R. § 4.71a, Diagnostic Code 5230. 

For the second, third, fourth, and fifth digits of the hand, the metacarpophalangeal (MCP) joint has a range of 0 to 90 degrees of flexion, the proximal interphalangeal (PIP) joint has a range of 0 to 100 degrees, and the distal interphalangeal joint (DIP) has a range of 0 to 70 or 80 degrees. 38 C.F.R. § 4.71a, Evaluation of Ankylosis of Limitation of Motion of Single or Multiple Digits of the Hand, (1) (2016).

Initially, the Board acknowledges that the Veteran has complained of pain in his hands and fingers. He has received VA treatment for the pain, including multiple cortisone injections, and also takes medication.

The Veteran was afforded a VA examination in April 2010. He indicated repeated trigger fingers requiring multiple cortisone injections since 2002. He also indicated the fingers involved included his bilateral middle/long fingers and little fingers, but denied any involvement of the index fingers. The Veteran complained of intermittent pain at the base of the fingers when triggering approximately five times per week each time lasting for three hours. The pain does not travel or radiate. The Veteran stated that he treated his pain with ibuprofen, primrose oil, and cortisone injections. He explained that he receives cortisone injections approximately every six to nine months. Physical examination showed that the Veteran is right hand dominant. Examination of the wrist was completely normal. Examination of the hands and fingers showed that he could tie his shoelaces, fasten buttons, and pick up a piece of paper and tear it, all without difficulty. The tips of the fingers could approximate the transverse crease of the palm with all fingers on both hands with no measurable gap. The Veteran could oppose all fingers with the thumb involving both hands with no measurable gap. Grip strength was normal bilaterally Examination of the thumb and index finger was completely normal. Examination of the middle/long finger showed mild locking and triggering .There was a palpable flexor nodule noted along the tendon sheath just proximal to the MP joint. Despite this, range of motion was completely normal and full. Ring finger testing was also full and normal bilaterally. Examination of the left little finger revealed mild triggering with a small palpable flexor tendon nodule noted just proximal to the MP joint. Examination of the right little finger revealed mild triggering. For all fingers tested there was no evidence of additional joint limitation due to pain, weakness fatigue lack of endurance or incoordination. Additional testing showed mild Dupuytren's contractures of the left middle and ring fingers, as well as mild Dupuytren's contractures of the right ring finger. A diagnosis of left long finger and little finger trigger finger with left middle and ring finger Dupuytren's contractures, along with trigger finger right long and little finger and mild right ring finger Dupuytren s contractures was provided.

Pursuant to the Board's May 2015 remand, the Veteran was provided another VA examination in January 2016. The Veteran reported stiffness in his fingers and again stated that he treats his trigger fingers with cortisone injections. Upon examination the right hand had range of motion as follows:

Index finger: 0 degrees extension to the MCP, PIP and DIP with 90 degrees flexion to MCP, 100 degrees to PIP and 70 degrees to DIP; 
Long finger: 0 degrees extension to the MCP, PIP and DIP with 80 degrees flexion to MCP, 90 degrees to PIP and 60 degrees to DIP;
Ring finger: 0 degrees extension to MCP, PIP and DIP with 90 degrees flexion to MCP, 100 degrees to PIP and 70 degrees to DIP; 
Little finger: 0 degrees extension to MCP, PIP and DIP with 85 degrees flexion to MCP, 90 degrees to PIP and 65 degrees to DIP; 
Thumb: 0 degrees extension to MCP and IP with 100 degrees flexion to CP and 90 degree to IP.


Additionally, upon examination the left hand had range of motion as follows: 

Index finger: 0 degrees extension to the MCP, PIP and DIP with 90 degrees flexion to MCP, 100 degrees to PIP and 70 degrees to DIP;
Long finger: 0 degrees extension to the MCP, PIP and DIP with 80 degrees flexion to MCP, 90 degrees to PIP and 65 degrees to DIP;
Ring finger: 0 degrees extension to MCP, PIP and DIP with 90 degrees flexion to MCP, 100 degrees to PIP and 70 degrees to DIP;
Little finger: 0 degrees extension to MCP, PIP and DIP with 80 degrees flexion to MCP, 95 degrees to PIP and 65 degrees to DIP;
Thumb: 0 degrees extension to MCP and IP with 100 degrees flexion to CP and 90 degree to IP.

For both the left and right hands, there was no gap between the pad of the thumb and fingers; no gap between the finger and proximal transverse crease of the hand on maximum finger flexion and no evidence of abnormal range of motion that contributes to functional loss, to include an absence of pain with use or evidence of localized tenderness or pain with palpation of the joint or soft tissues. Furthermore, repeated motion testing was performed after three repetitions without evidence of additional loss or functional impairment. Grip strength was 5/5. There was no evidence of ankyloses or other pertinent physical findings, complications, conditions, signs, or symptoms.

To summarize, the Veteran has been diagnosed with left long finger and little finger trigger finger with left middle and ring finger Dupuytren's contractures, along with trigger finger right long and little finger and mild right ring finger Dupuytren's contractures. No other fingers on either hand, including his thumbs, are impacted. 

After reviewing all of the evidence, the Board finds that an initial noncompensable evaluation is appropriate, based on the limitation of motion criteria under Diagnostic Codes 5228, 5229, and 5230. No disability has been identified for the Veteran's thumbs, so Diagnostic Code 5228 is inapplicable. At no time has the Veteran ever been found to have a gap of one inch or more between the index or long fingertip and the proximal transverse crease of the palm, even when pain, repetitive motion on use, and flare ups were taken into consideration and thus a compensable rating under Diagnostic Code 5229 cannot be assigned. Diagnostic Code 5230, which applies to the little finger, does not allow for any compensable rating regardless of the extent of the limitation of motion. There is also no evidence that the Veteran has had ankylosis in any of his digits at any time during the applicable appeal period.

The Board has considered the Veteran's lay statements regarding the functional impact of his service-connected disabilities. The Veteran is competent to report his own observations with regard to the severity of his hand and finger impairment, including reports of pain and decreased mobility. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Veteran has stated that he has pain in his fingers and that it makes it difficult to grip things. The occurrence of pain or increased difficulty while performing such activities is not an additional symptom, but rather the practical effect of the symptoms of pain and limited range of motion which have been clinically observed and measured in the Veteran's medical records. To the extent that the Veteran argues his symptomatology is more severe than shown on evaluation, his statements must be weighed against the other evidence of record. Here, the specific examination findings of trained health care professionals are of greater probative weight than the Veteran's more general lay assertions.

The discussion above reflects that the symptoms and effects of his disabilities have been fully considered and are contemplated in the rating schedule. The Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016); Doucette v. Shulkin, 38 Vet. App. 366, 369-70 (2017).

Accordingly, entitlement to an initial compensable disability evaluation for right and left trigger fingers/Depuytren's contractures must be denied. In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claims for higher evaluations, the doctrine is not for application. 38 U.S.C.A. § 5107.

Effective Date Prior to November 27, 2002 for Service Connection of Chloracne

The Veteran seeks entitlement to an effective date prior to November 27, 2002 for service connection of chloracne. 

As noted, the Court vacated and remanded the Board's May 2015 decision as to the effective date issue. Particularly, the Court found that the Board should have addressed whether the Veteran was entitled to benefits on a presumptive basis as a result of his service in Vietnam and evidence that he has experienced chloracne since his military service. 

In general, "the effective date of an award . . . shall be fixed in accordance
with the facts found, but shall not be earlier than the date of receipt of application
therefor." 38 U.S.C. § 5110(a); see also 38 C.F.R. § 3.400 (providing that "the effective date of an evaluation and award of . . . compensation . . . will be the date of receipt of the claim or the date entitlement arose, whichever is later").
However, when compensation is awarded pursuant to any change in the law that
creates a new entitlement, then the effective date will be based on the facts found, and the claimant may receive retroactive payments for up to one year prior to the date of application for benefits or the date of the administrative determination of entitlement, whichever is earlier. 38 U.S.C.A. § 5110(g); see 38 C.F.R. § 3.114(a). This applies to both original and reopened claims. 38 C.F.R. 3.114(a).

For veterans shown to have had qualifying service in Vietnam during a specified period, VA presumes exposure to Agent Orange; based on this presumed exposure, VA regulations provide that certain specified conditions may qualify for service connection on a presumptive basis. 38 U.S.C.A. § 1116(a); 38 C.F.R. §§ 3.307(a), 3.309(e). Chloracne was added to the list of presumptive Agent Orange disabilities as of February 6, 1991, and the current provision became effective the same date it was signed into law. See 58 Fed. Reg. 29,107, 29,109 (May 19, 1993) (adding chloracne, in addition to other diseases associated with military service in Vietnam, to the list of diseases subject to presumptive service connection, effective February 6, 1991). Additionally, VA has clarified that the addition of a disability to the rating schedule was a "liberalizing VA issue" for purposes of 38 C.F.R. § 3.114(a). VA G.C. Prec. 26-97 (July 16, 1997) (providing that the addition of PTSD to the rating schedule was a "liberalizing VA issue" for purposes of 38 C.F.R. § 3.114(a)). A claimant can receive retroactive payments based on a liberalizing law or liberalizing VA issue if (1) the evidence establishes that "the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing law or VA issue" and (2) that "such eligibility existed continuously from that date to the date of claim or administrative determination of entitlement." 38 C.F.R. § 3.114(a); see McKay v. Brown, 9 Vet. App. 183, 188 (1996). Thus, a claimant is entitled to a retroactive effective date of up to one year under 38 C.F.R. § 3.114(a) if the evidence establishes that (1) the veteran had developed one of the enumerated conditions listed as of the effective date of the liberalizing law, and (2) the disability continued up to the date that the claim for compensation was filed. See G.C. Prec. 26-97; Viglas v. Brown, 7 Vet. App. 1, 5 (1994) (section 5110(g) was intended to limit maximum amount of retroactive benefits recoverable to one year prior to the filing of an application).

Here, the Veteran served in Vietnam from April 16, 1969, to March 6, 1970. Additionally, the evidence shows that the Veteran's symptoms of chloracne began in service and that he has been experiencing the same symptomatology since at least 1969. Despite the fact that the RO awarded service connection on a direct basis, the Board determines that the Veteran could be entitled to service connection for chloracne on a presumptive basis. See 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(e). That would appear to be to his advantage, as discussed below.

As the evidence shows that the Veteran had already developed chloracne by February 6, 1991, the date of the liberalizing law adding chloracne to the list of diseases subject to presumptive service connection, and that his disability continued up to the date that the claim for compensation was filed in November 2002, the Veteran is entitled to an earlier effective date pursuant to the application of 38 U.S.C.A. § 5110(g) and 38 C.F.R. § 3.114(a) when viewing the evidence most favorably to him. 

Therefore, the Board concludes that the eligibility requirements for service connection for chloracne were met as of the date of the liberalizing law, February 6, 1991, and the effective date for service connection should be established as one year prior to the date of claim (November 27, 2002). Accordingly an effective date of service connection for chloracne of November 27, 2001 is in order. However, there is no provision for establishment of any earlier effective date. 


ORDER

Entitlement to service connection for pes planus is denied.

Entitlement to service connection for bilateral detached retinas is denied.

Entitlement to service connection for left ankle arthritis is denied.

Entitlement to an initial compensable evaluation for right trigger fingers/Dupuytren's contracture is denied.

Entitlement to an initial compensable evaluation for left trigger fingers/Dupuytren's contracture is denied.

Entitlement to an effective of November 27, 2001, but no earlier, for service connection of chloracne is granted.


REMAND

There are several claims previously decided by the AOJ, for which the Veteran has filed a timely Notice of Disagreement. These issues include entitlement to an effective date prior to August 2, 2006 for tibial tendon dysfunction, entitlement to an effective date prior to October 26, 2006 for obstructive sleep apnea, entitlement to an effective date prior to July 28, 2009 for a 100 percent combined evaluation, entitlement to an evaluation in excess of 10 percent for tibial tendon dysfunction, and entitlement to an evaluation in excess of 50 percent for obstructive sleep apnea.

The AOJ should now issue a statement of the case on the matters as the next step in permitting the Veteran to perfect an appeal to the Board. See Manlincon v. West, 12 Vet. App. 238, 240-41 (1999). It is further noted that the Board's award of an earlier effective date for the grant of service connection for chloracne herein may impact the Veteran's combined evaluation. 

Accordingly, the case is REMANDED for the following action:

The AOJ should issue a statement of the case addressing the issues of entitlement to an effective date prior to August 2, 2006 for tibial tendon dysfunction, entitlement to an effective date prior to October 26, 2006 for obstructive sleep apnea, entitlement to an effective date prior to July 28, 2009 for a 100 percent combined evaluation, entitlement to an evaluation in excess of 10 percent for tibial tendon dysfunction, and entitlement to an evaluation in excess of 50 percent for obstructive sleep apnea. Only if the Veteran submits a timely Substantive Appeal addressing these issues should they be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs